ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 0 4 2026

at____ o'clock and____ min____M
Lucy H. Carrillo, Clerk

KENNETH M. SORENSON
United States Attorney
District of Hawaii

AISLINN K. AFFINITO
Chief, Major Crimes

CRAIG S. NOLAN
MOHAMMAD KHATIB
Assistant U.S. Attorneys
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone:   (808) 541-2850
Facsimile:   (808) 541-2958
Email:         Craig.Nolan@usdoj.gov
                  Mohammad.Khatib@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. CR26-00019 SASP |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF PLEA |
| | ) | AGREEMENT |
| vs. | ) | |
| | ) | DATE: March 4, 2026 |
| JEREMY KOSKI, | ) | TIME: 3:00 p.m. |
| | ) | JUDGE: Hon. Shanlyn A.S. Park |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the

UNITED STATES OF AMERICA, by its attorney, the United States Attorney for

the District of Hawaii, and the defendant, JEREMY KOSKI, and his attorney,

Jacquelyn Esser, Esq., have agreed upon the following:

## THE CHARGES

1.     The defendant acknowledges that he has been charged in an Information with violating Title 18, United States Code, Sections 1343 and 1001.

2.     The defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorney.

3.     The defendant fully understands the nature and elements of the crimes with which he has been charged.

## THE AGREEMENT

4.     The defendant agrees to waive indictment and enter voluntary pleas of guilty to an Information, which charges him with wire fraud (Count 1) and false statement (Count 2).   The defendant is aware that he has the right to have these felonies asserted against him by way of grand jury indictment.   The defendant hereby waives this right and consents that these offenses may be charged against him by way of the Information.   In return, the United States Attorney for the District of Hawaii ("government") agrees not to file additional charges against defendant based on the conduct described in Paragraph 8 of this Memorandum of Plea Agreement and the defendant's statements relating to a social security benefits

application and appeal as described in discovery produced by the government to the defendant.

5.     The defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6.     The defendant enters this plea because he is in fact guilty of wire fraud (Count 1) and false statement (Count 2), as charged in the Information, and he agrees that this plea is voluntary and not the result of force or threats.

## PENALTIES

7.     The defendant understands that the penalties for the offenses to which he is pleading guilty include:

a.     As to Count 1, a term of imprisonment of up to 30 years and a fine of up to $1,000,000, plus a term of supervised release up to 5 years.

b.     As to Count 2, a term of imprisonment of up to 5 years and a fine of up to $250,000, plus a term of supervised release up to 3 years.

c.     In addition, the Court must impose a $100 special assessment as to each count to which the defendant is pleading guilty.  The defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing.  The defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the

prosecution will allow, though not require, the prosecution to withdraw from this Agreement at its option.

        d.    **Restitution.** The Court must also award restitution pursuant to Title 18, United States Code, Section 3663A, to the persons and entities victimized by the defendant's offenses. The defendant understands that the Court will determine the amounts of restitution to be ordered, as well as the persons and entities entitled to such restitution, with the assistance of the United States Probation Office. The defendant agrees to pay restitution for all losses caused by the defendant's conduct as described in the Information and Paragraph 8 of this Agreement, including at least $737,802 to the United States Small Business Administration and its participating lenders.

## FACTUAL STIPULATIONS

8.    The defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which the defendant is pleading guilty:

### Wire Fraud (Count 1)

a. On or about March 13, 2020, the President of the United States of America declared a nationwide emergency based on the COVID-19 pandemic pursuant to Section 501(b) of Robert T. Stafford Disaster Relief and Emergency Assistance Act, P.L. 93-288, as amended, 42 U.S.C. §§5121 et seq. In or about

4

March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, P.L. 116-136, to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic through loans and grants to small businesses for job retention and other specified expenses.   The loan and grant programs were administered by the United States Small Business Administration ("SBA"), which is a federal government agency.

b.  One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").   In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business to a bank participating in the PPP.   In the PPP loan application, the business, through its authorized representative, was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP.   In addition, a business applying for a PPP loan was required to provide documentation showing its payroll expenses.   If a recipient of a PPP loan spent the loan proceeds on permissible expenses within a

designated period of time and used a specified amount of the PPP loan proceeds on payroll expenses, then the loan was eligible to be forgiven.

c.   A second source of relief provided by the CARES Act was modifications to the preexisting SBA Economic Injury Disaster Loan ("EIDL") program, which provided direct low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.   The CARES Act authorized the SBA to provide EIDL loans of up to $2,000,000 to an eligible small business experiencing substantial financial disruption due to the COVID-19 pandemic.   To obtain an EIDL a qualifying business was required to submit an application to the SBA containing information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. EIDL applications were submitted directly to the SBA.   The amount of the loan, if approved, was determined based in part on the information provided in the application about an applicant's number of employees, revenue, and cost of goods.

*Relevant Entities*

d.   Michael Marcum Diabetes Inc. ("MMDC") was incorporated in the State of Hawaii on or about August 28, 2019 with the defendant identified as the Registered Agent.   MMDC had delinquent status for the years 2020, 2021, and 2022.

e.  Weblook LLC ("Weblook") was formed in the State of Washington on or about April 30, 2020, with the defendant identified as an initial Member, the Organizer, and the Registered Agent.   Weblook was deemed inactive on or about May 1, 2021, and was administratively dissolved on or about September 3, 2021 by the Washington Secretary of State ("WSOS").

f.  BTC Miner Inc. ("BTCM") was incorporated in the State of Washington on or about October 23, 2014, with the defendant identified as the Incorporator and the Registered Agent.   BTCM was administratively dissolved on or about February 1, 2016, was reinstated on or about April 29, 2020, was deemed inactive on or about November 1, 2020, and was administratively dissolved on or about March 3, 2021 by the WSOS.

*The Defendant's Scheme to Defraud*

g.  From in or about March 2020 to in or about June 2020, in Hawaii and elsewhere, the defendant, knowingly devised, intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property from the SBA and its participating lenders by means of materially false and fraudulent pretenses, representations, and promises, and transmitted and caused to be transmitted by means of interstate wire, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

h.  In furtherance of the scheme, the defendant submitted applications to the SBA and financial institutions seeking funds under the PPP and the EIDL program, intending and knowing that the applications contained false representations material to the determination of eligibility under those programs.

*PPP Application to Lender 1 in Name of MMDC*

i.  At all times relevant here, Lender 1 was a financial institution participating in the PPP as a lender approved by the SBA.

j.  On or about May 4, 2020, from a location in the State of Hawaii, the defendant electronically submitted to Lender 1 a PPP loan application in the name of MMDC seeking $285,502 in PPP funds, and identifying himself as the 100% owner.

k.  On the PPP application the defendant falsely represented that MMDC had 20 employees and an average monthly payroll of $114,201.  The defendant identified the purpose of the PPP loan as "payroll."   In fact, MMDC had no employees or payroll during the relevant time period.

l.  On the PPP application, the defendant falsely answered "no" to the question whether the applicant has any other ownership in a business or common management with any other business.  If the defendant had answered "yes," he would have been required to list all such businesses and describe their relationship.

In fact, the relevant entities described in this Information were owned and managed by the defendant.

m. In support of the PPP application, the defendant submitted documents purporting to be IRS Forms 941, known as "Employer's Quarterly Federal Tax Return," for the first, second, third, and fourth quarters of 2019 for MMDC with address 335 Merchant Street, #2481, Honolulu, HI 96813.  Each of the submitted Forms 941 bears the signature of the defendant, and states that MMDC had 20 employees with wages totaling $342,603 for each quarter.  In fact, MMDC has not filed any Forms 941 or 940, known as "Employer's Annual Federal Unemployment Tax Return," for tax years 2019 and 2020.

n. On the PPP application, which contained an admonishment that making a false statement to obtain the loan is punishable by imprisonment, a fine, or both, citing 18 U.S.C. § 1001 and other statutes, the defendant falsely certified, among other things:

i.    MMDC was in operation on February 15, 2020;

ii.   The loan funds would be used to retain workers, maintain payroll or make mortgage interest payments, lease payments and utility payments;

iii.  For the period February 15, 2020 to December 31, 2020, MMDC had not received and would not receive another PPP loan; and

9

iv.    The information provided in the application and all supporting documents and forms was true and accurate in all material respects.

o.  On or about May 15, 2020, as a result of the PPP application and supporting documents provided by the defendant, the loan was approved by Lender 1 and the SBA, and Lender 1 wired $285,502 to the bank account the defendant had designated for receipt of the funds.

*PPP Application to Lender 2 in Name of Weblook*

p.  At all times relevant here, Lender 2 was a financial institution participating in the PPP as a lender approved by the SBA.

q.  On or about May 18, 2020, from a location in the State of Hawaii, the defendant electronically submitted to Lender 2 a PPP application in the name of Weblook seeking $187,500 in PPP funds and identifying himself as the 100% owner.

r.  On the PPP application, the defendant falsely represented that Weblook had 20 employees and an average monthly payroll of $75,000.  The purposes checked for this loan were "payroll."  In fact, Weblook had no employees or payroll during the relevant time period.

s.  On the PPP application, the defendant falsely answered "no" to the question whether the applicant has any other ownership in a business or common management with any other business.  If the defendant had answered "yes," he

10

would have been required to list all such businesses and describe their relationship. In fact, the relevant entities described in this Information were owned and managed by the defendant.

t. In support of the PPP application, the defendant submitted documents purporting to be IRS Forms 941 for the first, second, third, and fourth quarters of 2019 for Weblook with address 13502 117th Ave. NE, Kirkland WA 9803. Each of the submitted Forms 941 bears the signature of the defendant, and states that Weblook had 20 employees with wages totaling $342,603 for each quarter. In fact, Weblook has not filed any Forms 941 or 940 for tax years 2019 and 2020.

u. On the PPP application, which contained an admonishment that making a false statement to obtain the loan is punishable by imprisonment, a fine, or both, citing 18 U.S.C. § 1001 and other statutes, the defendant falsely certified, among other things:

i.   Weblook was in operation on February 15, 2020;

ii.   The loan funds would be used to retain workers, maintain payroll or make mortgage interest payments, lease payments and utility payments;

iii.   For the period February 15, 2020 to December 31, 2020, Weblook had not received and would not receive another PPP loan; and

iv.   The information provided in the application and all supporting documents and forms was true and accurate in all material respects.

11

v. On or about May 19, 2020, as a result of the PPP application and supporting documents provided by the defendant, the loan was approved by Lender 2 and the SBA, and Lender 2 wired $187,500 to the bank account the defendant had designated for receipt of the funds.

*EIDL Application to SBA in Name of Weblook*

w. From on or about April 1, 2020 to on or about June 7, 2020, the defendant electronically submitted to the SBA an EIDL application in the name of Weblook seeking $150,000.

x. On the EIDL application, the defendant falsely represented that Weblook had five employees as of January 31, 2020, and gross income of $5,500,000 for the year ending January 31, 2020. In fact, Weblook had no employees or gross income during the relevant time period.

y. The EIDL application signed by the defendant required him to certify under penalty of perjury that the information in the application and submitted with the application was true and correct. Citing 18 U.S.C. § 1001 and other criminal and civil statutes, the application also included a warning that "any false statement or misrepresentation to SBA may result in criminal, civil, or administrative sanctions including, but not limited to . . . fines and imprisonment, or both."

z. On or about June 7, 2020, the SBA emailed the defendant an EIDL Loan Authorization and Agreement for his signature. On or about June 7, 2020,

SBA electronically received a signed copy of the agreement bearing the defendant's digital signature, which was submitted from a location in the State of Hawaii.

aa.   On or about June 10, 2020, as a result of the EIDL application provided by the defendant, the loan was approved by the SBA, and the SBA wired $149,900 to the bank account the defendant had designated for receipt of the funds.

*EIDL Application to SBA in Name of BTCM*

bb.   From on or about May 7, 2020 to on or about June 24, 2020, from a location in the State of Hawaii, the defendant electronically submitted to the SBA an EIDL application in the name of BTCM seeking $115,000.

cc.   On the EIDL application, the defendant falsely represented that BTCM had 20 employees as of January 31, 2020, and gross income of $1,500,000 for the year ending January 31, 2020.   In fact, BTCM had no employees or gross income during the relevant time period.

dd.   The EIDL application signed by the defendant required him to certify under penalty of perjury that the information in the application and submitted with the application was true and correct.   Citing 18 U.S.C. § 1001 and other criminal and civil statutes, the application also included a warning that "any false statement or misrepresentation to SBA may result in criminal, civil, or administrative sanctions including, but not limited to . . . fines and imprisonment, or both."

13

ee.  On or about June 24, 2020, the SBA emailed the defendant an EIDL Loan Authorization and Agreement for his signature.   On or about June 24, 2020, SBA electronically received a signed copy of the agreement bearing the defendant's digital signature, which was submitted from a location in the State of Hawaii.

ff.  On or about June 26, 2020, as a result of the EIDL application provided by the defendant, the loan was approved by the SBA, and the SBA wired $114,900 to the bank account the defendant had designated for receipt of the funds.

*The Wire Communications*

gg.  On or about the following dates, in the District of Hawaii and elsewhere, JEREMY the defendant, the defendant, for the purpose of executing the aforesaid scheme and artifice to defraud, and attempting to do so, knowingly transmitted and caused to be transmitted by means of interstate wire, certain writings, signs, signals, pictures, and sounds, as follows:

/ /

/ /

/ /

/ /

/ /

14

| Approximate Date | Description of Wire |
|---|---|
| May 4, 2020 | Submission of a PPP application to Lender 1 via Internet |
| May 15, 2020 | Lender 1 wire of $285,502 to bank account |
| May 18, 2020 | Submission of a PPP application to Lender 2 via Internet |
| May 19, 2020 | Lender 2 wire of $187,500 to bank account |
| June 7, 2020 | Submission of signed EIDL Loan Authorization and Agreement to SBA via Internet |
| June 10, 2020 | SBA wire of $149,900 to bank account |
| June 24, 2020 | Submission of signed EIDL Loan Authorization and Agreement to SBA via Internet |
| June 26, 2020 | SBA wire of $114,900 to bank account |

hh. The defendant's violations occurred in relation to, and involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency, and affected a financial institution.

False Statement to Department of Veterans Affairs (Count 2)

ii.    On or about April 17, 2023, while in Hawaii, the defendant electronically signed and submitted to the Department of Veterans Affairs ("VA") a Veteran's Application in Acquiring Specially Adapted Housing or Special Home Adaptation Grant (VA Form 26-4555).  Immediately below the signature box, the form admonished, "The law provides severe penalties which include fine or imprisonment, or both, for the willful submission of any statement or evidence of a

15

material fact, knowing it to be false."   On the form the defendant falsely represented that he was a United States military veteran and he had a military service-connected disability.   In fact, as the defendant knew at the time of his representations, he was not a United States military veteran and he did not have a military service-connected disability.   The defendant's false representations were material to a determination by the VA as to whether the defendant qualified for the veteran's benefits he was seeking.

jj.  In addition to the above, while in Hawaii on or about July 8, 2021, and again on or about November 17, 2021, the defendant electronically signed and submitted to the VA an Application for Pension (VA Form 21P-527EZ).   On each of the forms the defendant falsely represented that he was a United States military veteran, he had served in a combat zone, and he had been a prisoner of war.   In fact, as the defendant knew at the time of his representations, he was not a United States military veteran, he had not served in a combat zone, and he had not been a prisoner of war.   The defendant's false representations were material to a determination by the VA as to whether the defendant qualified for the veteran's pension he was seeking.

9.     Pursuant to CrimLR 32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the defendant is pleading guilty adequately reflect the seriousness of the actual

16

offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

## SENTENCING STIPULATIONS

10.     Pursuant to CrimLR 32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of the defendant in connection with this matter:

a.     As of the date of this agreement, it is expected that the defendant will enter a plea of guilty prior to the commencement of trial, will truthfully admit his involvement in the offense and related conduct, and will not engage in conduct that is inconsistent with such acceptance of responsibility.  If all of these events occur, and the defendant's acceptance of responsibility continues through the date of sentencing, a downward adjustment of 2 levels for acceptance of responsibility will be appropriate.  *See* U.S.S.G. § 3E1.1(a) and Application Note 3.

b.     The United States Attorney agrees that the defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to the defendant.  Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in

17

sentencing offense level pursuant to Guideline § 3E1.1(b), if the defendant is otherwise eligible.   The defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the United States Probation Office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11.    The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.   The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

12.    The parties represent that as of the date of this agreement there are no material facts in dispute.

## APPEAL/COLLATERAL REVIEW

13.    The defendant is aware that he has the right to appeal his conviction and the sentence imposed.   The defendant knowingly and voluntarily waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the Guidelines range as determined by the Court at the time of

sentencing, and any lawful restitution or forfeiture order imposed, or the manner in which the sentence, restitution, or forfeiture order was determined, on any ground whatsoever, in exchange for the concessions made by the prosecution in this Agreement. The defendant understands that this waiver includes the right to assert any and all legally waivable claims.

a.      The defendant also waives the right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that the defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b.      If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the defendant, the defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c.      The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

## FINANCIAL DISCLOSURE

14.    In connection with the collection of restitution or other financial obligations, including forfeiture as set forth below, that may be imposed upon him, the defendant agrees as follows:

a.    The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including any assets held by a spouse, nominee, or third party.   The defendant understands that the United States Probation Office (hereinafter "USPO") will conduct a presentence investigation that will require the defendant to complete a comprehensive financial statement.   To avoid the requirement of the defendant completing financial statements for both the USPO and the government, the defendant agrees to truthfully complete a financial statement provided to the defendant by the United States Attorney's Office.   The defendant agrees to complete the disclosure statement and provide it to the USPO within the time frame required by the United States Probation officer assigned to the defendant's case.   The defendant understands that the USPO will in turn provide a copy of the completed financial statement to the United States Attorney's Office.   The defendant agrees to provide written updates to both the USPO and the United States Attorney's Office regarding any material changes in circumstances, which occur prior to sentencing, within seven days of the event giving rise to the changed

circumstances.   The defendant's failure to timely and accurately complete and sign the financial statement, and any written update thereto, may, in addition to any other penalty or remedy, constitute the defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

b.      The defendant expressly authorizes the United States Attorney's Office to obtain his credit report.   The defendant agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the financial information, such releases to be valid for a period extending 90 days after the date of sentencing.   The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the USPO.

c.      Prior to sentencing, the defendant agrees to notify the Financial Litigation Unit of the U.S. Attorney's Office before making any transfer of an interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

## IMPOSITION OF SENTENCE

15.    The defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.   The defendant agrees that there is no promise or guarantee of the applicability or non-applicability

21

of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

16.    The defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary.   The defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the Agreement will not undermine the statutory purposes of sentencing.

## WAIVER OF TRIAL RIGHTS

17.    The defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    If the defendant persisted in a plea of not guilty to the charges against him, then he would have the right to a public and speedy trial.   The trial could be either a jury trial or a trial by a judge sitting without a jury.   The defendant has a right to a jury trial.   However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the prosecution, and the judge all must agree that the trial be conducted by the judge without a jury.

b.    If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.   The defendant and his attorney would have a say

in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c.      If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the defendant's guilt beyond a reasonable doubt.

d.      At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the defendant. The defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, the defendant could present witnesses and other evidence on his own behalf. If the witnesses for the defendant would not appear voluntarily, the defendant could require their attendance through the subpoena power of the Court.

e.      At a trial, the defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

23

18.    The defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph.   The defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

## USE OF PLEA STATEMENTS

19.    If, after signing this Agreement, the defendant decides not to plead guilty as provided herein, or if the defendant pleads guilty but subsequently makes a motion before the Court to withdraw his guilty plea and the Court grants that motion, the defendant agrees that any admission of guilt that he makes by signing this Agreement or that he makes while pleading guilty as set forth in this Agreement may be used against him in a subsequent trial if the defendant later proceeds to trial.   The defendant voluntarily, knowingly, and intelligently waives any protection afforded by Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence regarding the use of statements made in this Agreement or during the course of pleading guilty when the guilty plea is later withdrawn.   The *only* exception to this paragraph is where the defendant fully complies with this Agreement but the Court nonetheless rejects it. Under those circumstances, the United States may not use those statements of the defendant for any purpose.

20.    The defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of the

24

defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

21.    The defendant and his attorney acknowledge that, apart from any written proffer agreements, if applicable, no threats, promises, agreements or conditions have been entered into by the parties other than those set forth in this Agreement, to induce the defendant to plead guilty.   Apart from any written proffer agreements, if applicable, this Agreement supersedes all prior promises, agreements or conditions between the parties.

22.    To become effective, this Agreement must be signed by all signatories listed below.

//

//

//

//

//

//

//

//

//

23.     Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto.

AGREED:

KENNETH M. SORENSON
United States Attorney
District of Hawaii

_____ for          Dated: ___3/4/2026___
AISLINN K. AFFINITO
Chief, Major Crimes

_____          Dated: ___3/4/2026___
MOHAMMAD KHATIB
Assistant U.S. Attorney

_____          Dated: ___3/4/2026___
JEREMY KOSKI
Defendant

_____          Dated: ___3/4/2026___
JACQUELYN ESSER
Attorney for Defendant

26